The Farmers Insurance Company *v.* Borders et al.

[No. 3,424. Filed April 16, 1901.]

Corporations.— *Organization.—De Facto Corporation. — Collateral Attack.*—Where an attempt is made in good faith to organize a mutual insurance company under the statute providing for the organization of such companies, and corporate rights are exercised thereunder, a *de facto* corporation is created, and its *de jure* existence cannot be questioned by a policy-holder in an action by the company on a note given for premiums. *pp. 493, 494.*

Same.—*Organization.—Articles of Incorporation.—Collateral Attack.* —An answer in an action by a mutual insurance company on a premium note alleging that the articles of incorporation failed to name the counties in which the company proposed to do business as required by statute is insufficient, since such omission may fairly be construed an irregularity in an attempt to comply with the statute. *pp. 494, 495.*

From the Daviess Circuit Court. *Reversed.*

*E. F. Faith, U. G. Faith, A. J. Padgett, J. A. 'Padgett* and *J. H. Underwood,* for appellant.

*C. B. Rogers, J. T. Rogers, J. W. Ogdon* and *E. Inman,* for appellees.

Comstock, J.—The complaint alleges that the plaintiff is a corporation duly organized under the laws of this State for the purpose of insuring the property of its members from losses occasioned by fire and lightning; that it is a mutual company, the members sharing in the profits and losses; that on the 15th day of April, 1895, upon application of the defendants (appellees) appellant issued to them its certain policy of insurance; that at said date, as a part consideration for said insurance, appellees executed to appellant their three certain promissory notes, which are made parts of the complaint as exhibit A, exhibit B, and exhibit C, respectively, said notes marked exhibit A, and exhibit B, being for $16 each, said note marked exhibit C, being an assessment note for $40; that, pursuant to article five of the by-laws, which article is made a part of the complaint, an assessment of

fifty per cent. was duly made on said last named note; that said notes and the said assessment are due and wholly unpaid.

To an answer in abatement the court sustained a demurrer. Appellee Mary Borders then filed her separate answer, averring that she was at the time of the execution of the notes sued on a married woman, being the wife of her codefendant, John P. Borders; that she executed said notes sued on as surety only. Appellees answered jointly in five paragraphs, to the third and fifth of which the court overruled a demurrer for want of facts. This action of the trial court is made the first and second specifications of the assignment of errors.

The third paragraph of answer avers that "the plaintiff purports to be a corporation having attempted to organize its association under the provisions of section 4932 of the revised statutes of Indiana of 1894 known as Burns Revised Statutes, and, as a pretended association under the said statute, contracted with the defendants as stated in its complaint, and that the notes sued on were given by the defendants, the defendant Mary Borders executing the same as surety, and the defendant John P. Borders as principal, in settlement for the policy of insurance named in said complaint, and defendants aver that the property insured and named in said policy was at the time said policy was issued and has ever since been in Martin county, Indiana, and that the defendants have during all of said time resided and still reside in said county, and that the contract, pursuant to which the notes sued on were given and said policy was issued, was made and entered into in said Martin county; that said notes sued on were also executed in said county, and the defendants further aver that at said time said policy was issued and said notes were executed, and at the time of the commencement of this action the plaintiff did not have on file or recorded its articles of association, or a copy of the same, in said Martin county, naming said county as a part

of the territory in which it was organized to do and transact business as such company, nor does its articles of incorporation name or state said county, or any county, in which it intends, seeks, or expects to operate and do business as such company."

The fifth paragraph states substantially the same facts as the third, except that it omits the averment that appellant did not have its articles of association recorded in Martin county. It also avers that the board of directors had no authority to order and direct an assessment to be made on the note sued on for the purpose of paying losses sustained by the members of said company, and that the assessment and notes referred to were illegal and void.

Section 4932, *supra,* under which it is alleged appellant was attempted to be organized, reads as follows: "Any number of persons, not less than ten, may form an incorporated company for the purpose of mutual insurance of the property of its members against loss by fire or damage by lightning; * * *. The articles for forming such associations shall be signed by the persons who at first form such association, and be recorded in the office of the recorder of the county or counties where such association does business. Such associations shall be managed by such officers as their articles may provide for; and in the election of such officers each member of the association shall be entitled to one vote. Every such association may sue or be sued, by such name as shall be set forth in the articles of association, and shall have all the other powers of corporate bodies: Provided, That no company organized under this act shall do any business, or take any risks, or make any insurance in more than three counties; which counties shall be contiguous, and shall be set forth in its articles of association."

It clearly appears from the complaint and the third and fifth paragraphs of answer that appellant attempted in good faith to organize a corporation under the statute, and to

conduct the business of a mutual fire insurance company. In pursuance of that purpose, the contract of insurance and the notes set out and mentioned in the complaint were entered into. When this has been done, under many decisions of our Supreme Court, a *de facto* corporation is created, which can not be collaterally attacked. The corporation, the existence of which is here questioned, was authorized by statute. It exercised corporate rights. Its *de jure* existence can be questioned only by the State in appropriate proceedings. The decisions make a distinction in pretended corporations authorized and those not authorized by statute. The *de jure* existence of the former can only be questioned by the State. Those under the latter class can have no *de facto existence,* and a party to a contract with a pretended corporation not authorized by statute may deny its corporate existence at the date of the contract. In *Indiana Bond Co.* v. *Ogle,* 22 Ind. App. 593, 72 Am. St. 326, the subject is fully considered, and many authorities pertinent to the question under consideration are collected.

The allegation in said fifth paragraph that the board of directors of appellant had no authority to direct an assessment to be made on the notes in suit is ineffective in view of article 5, section 1 of the by-laws of appellant, made a part of its complaint, making it the duty of the board of directors to make assessments on premium notes necessary to pay expenses and loans and for carrying on the business of the company, and of which by-law appellees are bound to take notice. *Schmidt* v. *German Ins. Co.,* 4 Ind. App. 340.

Counsel for appellee cite *Eddy* v. *Merchants, etc., Ins. Co.,* 72 Mich. 651, 40 N. W. 775, in support of the ruling of the trial court. In the case cited policies of insurance were issued outside of the territorial limits fixed by the statute, and the court held that they were issued without authority. We quote from the opinion: "The defendant became incorporated August 31, 1881, under the law of 1873, and the

amendments thereof.   See How. Stat. p. 1085.   The following prohibition is contained in section 3 of the act (§4249), viz.: 'No company organized under this act shall do any business, or take any risks, or make any insurance, in more than three counties in this state, which counties shall be contiguous, and shall be named and set forth in their charter,' etc.   After the statute of 1883 went into effect, defendant disposed of all its policies, except manufacturing risks; and, after amending its articles of association to conform to its change of business thus made, commenced doing business outside of the three counties named, and it was while it was doing business outside that it took the policy in Genesee county under which the plaintiff claims.   We held, in *Skinner* v. *Wilhelm*, 63 Mich. 568, 30 N. W. 311, the law of 1883 unconstitutional.   This, of course, left the business done outside of the three counties within the prohibition of the general statute above referred to, and left the company without any authority whatever to make the one sued upon in this case."   It thus appears that the business in question was done without any authority of law and in direct violation of the statute.   No question of the regularity of the incorporation was considered.   There is no pretense that there was any authority for the transaction of business.

In the answers before us it does not appear that appellant did business in more than three counties, nor that said counties were not contiguous, nor that Martin county was not one of the three in which business was transacted.   The Michigan case may be distinguished from the case before us.   The *proviso* in the statute inhibits the transaction of business in more than three counties, and requires that they shall be contiguous, which shall be set forth in the articles of association.   The omission to name them in the articles of incorporation may fairly be construed to be an irregularity in an attempted compliance with the statute.   The demurrer to the third and fifth paragraphs of answer should have been sustained.

The conclusion reached renders it unnecessary to consider the third specification of the assignment of errors, viz., the action of the trial court in sustaining appellees' demurrer to appellant's second paragraph of reply. Cross-errors are assigned, but not having been discussed are waived.

Judgment reversed, with instruction to sustain appellant's demurrer to third and fifth paragraphs of appellees' joint answer.